UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATLER CONCRETE & SUPPLY CO.,
named as United States of America for the
use of Statler Concrete & Supply Co.,
a Michigan Corporation,

   Plaintiff,

v.

ADP CONCRETE SERVICES, INC.,
a Michigan Corporation, J.O.A.
CONSTRUCTION CO., INC., a
Michigan Corporation, and
TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
a Connecticut Corporation,

   Defendants.
                /

File No.  5:05-CV-147

HON. ROBERT HOLMES BELL

**O P I N I O N**

   Plaintiff Statler Concrete & Supply Co. ("Statler") filed, through the United States of America, a four count complaint against ADP Concrete Services, Inc. ("ADP"), J.O.A. Construction Co., Inc. ("J.O.A."), and Travelers Casualty and Surety Company of America ("Travelers").  Statler alleges breach of contract against ADP (Count I), violations of the Miller Act, 40 U.S.C. §§ 3131-34, against J.O.A. and Travelers (Count II), a claim based on a payment bond against J.O.A. and Travelers (Count III), and unjust enrichment against

J.O.A. (Count IV).[1]  This matter is before the Court on J.O.A. and Travelers' motion for summary judgment on Counts II and III.  For the reasons set forth below, the Court denies the motion for summary judgment.

I.

Statler's complaint seeks payment for materials supplied for the construction of the Total Army School System Project ("Project") at the Fort Custer Training Center in Augusta, Michigan.  In 2003, the United States Government entered into a contract with J.O.A. to act as general contractor on the Project.  As required by the Miller Act, 40 U.S.C. § 3131, J.O.A. obtained a payment bond on the Project from Travelers.  Thereafter, J.O.A. hired Dynamic Construction Services, Inc. ("Dynamic") as a subcontractor for the performance of concrete work on the Project.  Dynamic, in turn, hired ADP to supply certain labor and materials for the Project.  ADP then entered into a contract with Statler to supply materials for the Project.

Prior to delivering the materials, on June 7, 2004, Statler, Dynamic, and ADP entered into a joint check agreement in which the parties agreed that all payments for the Project would be payable by joint check to Statler and ADP.  Exhibit 1, Pl.'s Res. Br. (Docket #14).  Statler also claims that agents of Dynamic gave oral assurances that Dynamic would pay for the materials Statler supplied.  Exhibit 3, Holly Statler Aff. ¶¶ 7, 8, Pl.'s Res. Br.  Thereafter, Statler supplied materials to ADP for use in the Project.  Although Statler supplied the

---

[1] To date, ADP has not appeared or answered Statler's complaint and default has been entered against it by the Court.  *See* December 21, 2005, Entry of Default (Docket #7).

materials it has not been paid by any of the various entities involved in the Project. Statler claims it is owed $35,507.77 and has filed the present case in order to recover this amount. Counts II and III seek to recover from J.O.A. and Travelers on the Miller Act payment bond. J.O.A. and Travelers contend that summary judgment is appropriate because Statler has failed to allege contact with J.O.A. or Dynamic sufficient to give rise to Miller Act liability.

II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in the favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with

3

evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the facts are viewed in the light most favorable to the non-movant, they may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004). "A mere scintilla of evidence is insufficient." *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).

### III.

The Miller Act requires a prime contractor on a federal construction project to post both a performance bond and a payment bond. 40 U.S.C. § 3131. "The payment bond provides security to persons who supply labor or materials for the project. Such suppliers are precluded from filing liens on government facilities, and instead are granted a federal cause of action to satisfy any deficiency in payment by the prime contractor." *United States v. International Fidelity Ins. Co.*, 200 F.3d 456, 459 (6th Cir. 2000). The statute provides in pertinent part:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

40 U.S.C. § 3133(b)(2). The Supreme Court has explained that the right to sue on a payment bond does not extend to everyone who supplies labor or materials to a federal project:

> [T]he right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-contractors who, lacking express or

4

> implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act.

*Clifford F. MacEvoy Co. v. United States for the Use and Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107-08 (1944); *see also J.W. Bateson Co. v. United States ex rel. Bd. of Trustees of the Nat. Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 591 (1978) (Congress "intended the scope of protection of a payment bond to extend no further than to sub-subcontractors"); *United States for Use and Benefit of Water Works Supply Corp. v. George Hyman Const. Co.*, 131 F.3d 28, 31 (1st Cir. 1997) ("The Supreme Court has interpreted this provision to preclude recovery on the payment bond by anyone whose relationship to the general contractor is more remote than a second-tier subcontractor"); *United States for Use and Benefit of Global Bldg. Supply, Inc. v. WNH Ltd. Partnership*, 995 F.2d 515, 518 (4th Cir. 1993) ("The statute doesn't apply to everyone who supplies labor or materials toward the completion of the federal public works contract, however; it's limited to those who 'deal directly with the prime contractor' and those who 'have [a] direct contractual relationship with a subcontractor.'"); *United States for Use and Benefit of Consol. Pipe and Supply Co. v. Morrison-Knudsen Co., Inc.*, 687 F.2d 129, 131-32 (6th Cir. 1982) (same).

With these principles in mind, the Court turns to an evaluation of the evidence in this case. The parties agree that Statler had a contract to supply materials for the Project with ADP, a sub-subcontractor of the general contractor, J.O.A. Viewing this fact in isolation,

5

it appears that Statler is outside the scope of the Miller Act.  *See e.g.*, *J.W. Bateson*, 434 U.S. at 590-91.  Statler contends, however, that there is a genuine issue of material fact as to whether it had a "direct contractual relationship" with Dynamic, J.O.A.'s subcontractor, and is thus within the scope of the statute.  *Clifford F. MacEvoy*, 322 U.S. at 107-08.  In support, Statler points to the joint check agreement between Dynamic, Statler, and ADP, as well as oral assurances from Dynamic that it would pay Statler for the materials provided.  *See* Exhibit 1, Joint Check Agreement, Exhibit 3, Statler Aff. ¶¶ 5, 7-8.  Although Statler's reliance on the joint check agreement is misplaced and does not support a direct contractual relationship with Dynamic, Statler has produced evidence of an oral agreement between the two entities that renders summary judgment inappropriate at this time.

With regard to the joint check agreement, numerous courts have held that such agreements are not sufficient to establish a direct contractual relationship for purposes of the Miller Act.  For example, in *United States for Use and Benefit of Light and Power Utilities Corp. v. Liles Constr. Co.*, 440 F.2d 474 (5th Cir. 1971), the plaintiff, a manufacturer of electrical fixtures who supplied materials to a subcontractor on a federal construction project sought to recover on the payment bond issued to the defendant general contractor.  Plaintiff alleged that it had a direct contractual relationship with the general contractor through a joint check agreement.  *Liles Constr. Co.*, 440 F.2d at 476-77.  The Fifth Circuit, following the Tenth Circuit, held that the joint check agreement did not establish a contractual relationship

between the plaintiff and general contractor. *Id.* at 478 (citing *United States for Use of State Electric Supply v. Hesselden Constr. Co.*, 404 F.2d 774, 777 (10th Cir. 1968)).

In *Hesselden Constr. Co.*, a supplier to a subcontractor sought to establish a direct contractual relationship with the general contractor through a letter in which the general contractor agreed to make payments by a check payable to the subcontractor and supplier jointly. 404 F.2d at 775. The court held that no direct contractual relationship existed because, "[t]he letter agreement was merely a request by [supplier] that [general contractor] make further payments by joint checks." *Id.* at 777. These cases have been cited as determinative in similar situations involving joint check agreements. *See United States for the Use and Benefit of Metal Mfg., Inc. v. Federal Ins. Co.*, 656 F. Supp. 1194 (D. Ariz. 1987) (holding that an assignment of contract rights and joint check agreement did not create a direct contractual relationship as required under the Miller Act); *United States for the Use of Fordham v. P.W. Parker, Inc.*, 504 F. Supp. 1066 (D. Md. 1980) (joint check agreement and oral discussions surrounding the agreement did not establish a direct contractual relationship between materialman and prime contractor). Accordingly, the Court finds that, as a matter of law, the joint check agreement between Dynamic and Statler does not establish the type of direct contractual relationship contemplated under the Miller Act.

Although the joint check agreement between Dynamic and Statler is not sufficient to satisfy the requirements of the Miller Act, Statler has also alleged that oral discussions between agents of the two entities create a genuine issue of fact as to whether a direct

7

contractual relationship existed between Statler and Dynamic. In support, Statler has provided the affidavit of Holly Statler, the company's vice president, in which she explains that before Statler agreed to supply materials to the Project, Dynamic orally agreed to pay for the materials supplied. Statler Aff. ¶ 7. Ms. Statler also explained that Statler would not have supplied the materials unless Dynamic first agreed to pay. Statler Aff. ¶ 6. Based upon this oral agreement, Statler supplied the materials for the Project. Statler Aff. ¶ 9.

Given that the parties have not engaged in discovery in this case, there is little in the record regarding this purported oral agreement between Dynamic and Statler or the circumstances surrounding it. At this point in the proceeding, construing the facts in Statler's favor, Ms. Statler's affidavit indicates that Dynamic agreed to pay Statler for the materials supplied and used in the Project. Such an assumption of responsibility by the subcontractor is sufficient to create a genuine issue of fact as to whether Dynamic and Statler had a direct contractual relationship. *See United States for the Use and Benefit of Metal Mfg., Inc.*, 656 F. Supp. at 1197 ("The general proposition established by the cases is that a direct contractual relationship requires that the contractor or subcontractor actually assume responsibility to pay for the materials provided by the materialman."); *United States for the Use of Billows Elec. Supply Co. v. E.J.T. Constr. Co.*, 517 F. Supp. 1178 (E.D. Pa 1981) (holding that general contractor and materialman had direct contractual relationship where general contractor agreed to pay subcontractor's unpaid balance due and agreed to pay materialman directly for future orders). Further, because it is undisputed that the materials supplied by Statler were

8

incorporated into the Project, allowing the case to go forward at this time also comports with the liberal interpretation given to the Miller Act's purpose. *See United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957) (The purpose of the Miller Act is "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings."); *International Fidelity Ins. Co.*, 200 F.3d at 459 ("Because of the remedial nature of the Act, its provisions are to be liberally construed."). Accordingly, J.O.A. and Travelers' motion for summary judgment on Count II is denied. In light of the Court's denial of summary judgment on Count II, summary judgment is also denied on Count III. An order will be entered consistent with this opinion.

Date:   February 28, 2006              /s/ Robert Holmes Bell
                                                       ROBERT HOLMES BELL
                                                       CHIEF UNITED STATES DISTRICT JUDGE